**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHILPI KUMAR,<br><br>                    Plaintiff,<br><br>v.<br><br>THE STATE OF NEW JERSEY, et al.,<br><br>                    Defendants. | Civil Action No. 20-13927 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Shilpi Kumar ("Plaintiff") brings this action against New Jersey Schools Development Authority (the "NJSDA"), Jane Kelly, Don Guarriello, Jr., Colleen Connolly, Manuel Da Silva, Lizette Delgado, and Maribel Osnayo-Lytle (collectively, "Defendants"), alleging racial and ethnic discrimination under 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New Jersey Law Against Discrimination ("NJLAD"). Defendants move to dismiss[1] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Kumar has not alleged facts showing discriminatory conduct. Defendants also argue that many of Kumar's factual allegations are time-barred. I **GRANT** Defendants' motions in part and **DENY** them in part as follows: I **DISMISS** Kumar's § 1981 and NJLAD claims with prejudice; I **DISMISS** her § 1983 claim, Title VII race discrimination claim, and Title VII hostile work environment claim without prejudice; and she may proceed with her Title VII retaliation claim.

---

[1] Defendants NJSDA, Kelly, Guarriello, Connolly, Da Silva, and Delgado moved together, while Defendant Osnayo-Lytle moved separately. While Kumar opposes only one motion, I construe her opposition as applying to both.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following are the relevant facts based on Kumar's Amended Complaint. The NJSDA employed Kumar for eleven years, beginning February 17, 2009, as a Benefit Specialist in Human Resources ("HR"). Am. Compl., ¶ 17. Osnayo-Lytle supervised Kumar. *Id.* ¶ 26. Kelly and Guarriello were Vice Presidents, while Da Silva and Delgado were CEOs. *Id.* ¶¶ 4-5, 7-8.

According to Kumar, she was the only Indian[2] employee in her department, and Defendants repeatedly mistreated her on that basis. *Id.* ¶¶ 14-16. During a meeting in October 2017, for example, Kumar alleges that Kelly called her "unprofessional, "stupid," and "too smart (sarcastically)." *Id.* ¶ 26. Around the same time, Kumar alleges that Kelly instructed her not to pursue professional growth opportunities or a promotion within the NJSDA, at which point Kumar realized Kelly's and Osnayo-Lytle's "hatred, retaliation and discrimination." *Id.* ¶ 26. Furthermore, in November 2017, Osnayo-Lytle and Kelly purportedly attempted to suspend Kumar without pay and transfer her to a different department. *Id.* ¶ 25. The following month, all employees in HR apparently received a promotion and raise, except Kumar. *Id.* ¶ 27. Then, in February 2018, Kelly and Osnayo-Lytle sought to hire a new Deputy Director, but when Kumar expressed interest in the position, they excluded internal applications altogether. *Id.* ¶ 28.

Kumar further asserts that a newly hired white colleague received a $10,000 raise in early 2018, while Guarriello and Osnayo-Lytle gave Kumar just $2,000. *Id.* ¶ 30. In fact, according to the Amended Complaint, Guarriello and Osnayo-Lytle failed to pay Kumar's full raise. *Id.* ¶ 31. Delgado initiated an ethics investigation into the incident, after which Delgado fired Osnayo-Lytle and Kumar received a title change and $10,000.[3] *Id.* ¶ 39. Nevertheless, in July 2019, although

---

2       I refer to Kumar's national origin/background in the way that she refers to it in her briefs.

3       The Amended Complaint does not specify the reason for Osnayo-Lytle's termination or any details relating to the investigation.

Kumar handled most day-to-day HR operations, the NJSDA hired a white employee named Connolly as "Managing Director - Program Operations." *Id.* ¶ 33. According to Kumar, Connolly had no formal training or qualifications at the time. *Id.* ¶ 33.

Kumar avers she was again denied an opportunity for professional advancement in September 2019, when another open position—this time for Director of HR—was changed to only allow for external applicants. *Id.* ¶ 35. The NJSDA cited no qualified internal applicants as the reason, which Kumar disputes. *Id.* ¶ 37. Da Silva, Connolly, Kelly, and Guarriello apparently participated in this decision. *Id.* ¶¶ 35-36. In October 2019, Kumar filed a formal complaint with NJSDA's EEO Director, Manuel Castillo, alleging harassment, discrimination, and "hostility." *Id.* ¶ 36. That same month, Kelly allegedly promoted one of Kumar's white subordinates, Peter Green, to a director position over Kumar. *Id.* ¶ 38. Kumar alleges that, thereafter, hostility and harassment from Connolly, Guarriello, and Da Silva increased. Am. Compl., ¶ 36.

In February 2020, four months after learning that the NJSDA's legal department was investigating her for possible policy violations and "allegations involving [the] HRIS system ABRA," Am. Compl., ¶ 40, Kumar filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").[4] Ten days later, the NJSDA terminated Kumar. *Id.* ¶ 43. According to Kumar, this was not the first time the NJSDA took such action against an Indian employee: Sameer Shah was allegedly terminated for demanding equality in job advancement opportunities. *Id.* ¶ 40.

---

4    A copy of the EEOC complaint is not in the record. However, a copy of the EEOC's right-to-sue letter is attached to the Amended Complaint. Based on the letter, Kumar filed suit within the 90-day limitation period and her claims are timely in that regard. 42 U.S.C. § 2000e-5(f)(1); *Seitzinger v. Reading Hosp. and Medical Center*, 165 F.3d 236, 239 (3d Cir. 1999); *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986).

Kumar filed her original Complaint on October 5, 2020, and the Amended Complaint on January 5, 2021. Count I alleges violations of 42 U.S.C. §§ 1981 and 1983 against Osnayo-Lytle, Kelly, Guarriello, Connolly, Da Silva, and Delgado. Count II alleges Title VII violations against the NJSDA. Count III alleges violations of the NJLAD against the individual defendants. The crux of Kumar's claims under all statutes is that Defendants intentionally denied her career advancement opportunities, declined to promote her, and terminated her because she is Indian; created a hostile work environment throughout her time at NJSDA; and retaliated against her for filing a Charge with the EEOC. The NJSDA, Kelly, Guarriello, Connolly, Da Silva, and Delgado moved to dismiss on March 16, 2021. ECF No. 23. Osnayo-Lytle then moved to dismiss on April 19, 2021. ECF No. 28. Together, Defendants argue that Count I fails because Kumar does not allege a deprivation of a federal right, Count II fails because Kumar cannot assert individual liability under Title VII[5] and her allegations do not rise to the level of intentional discrimination, and Count III fails because Kumar has not pled employer liability against the NJSDA itself. They also argue that various allegations fall outside the applicable statutes of limitation.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), "failure to state a claim upon which relief can be granted" is grounds for dismissal. *Id.* On a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" when reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). The allegations set out in the complaint "must be enough to raise a right to relief above the speculative level." *Bell*

---

5     Kumar clarifies that she does not assert a claim against Osnayo-Lytle under Title VII. ECF No. 36, at 18.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint must instead "state a claim to relief that is plausible on its face." *Id.* at 547. The Third Circuit has developed a test to determine whether a pleading meets the standard set out in *Twombly*. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). First, the Court outlines the elements the plaintiff must plead to be entitled to relief. *Bistrian*, 696 F.3d at 365. Second, the plaintiff's allegations must be more than mere conclusory statements, which are not entitled to the presumption of truth. *Id.* Third, the Court must determine whether the well-pleaded facts "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bistrian*, 696 F.3d at 365.

## III.   DISCUSSION

### A.   *Limitations Periods and Untimely Allegations*

As a threshold matter, Defendants argue the statute of limitations restricts Kumar's claims under 42 U.S.C. § 1983 and the NJLAD. I agree. In New Jersey, the statute of limitations for a § 1983 claim is two years. *Bradford v. Bolles*, 645 F. App'x157, 159-160 (3d Cir. 2016); *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) (explaining that the "personal injury statute of the state in which the cause of action accrued" governs such actions). The statute of limitations under the NJLAD is the same. *Jackson v. Chubb Corp.*, 45 Fed. App'x. 163, 165 (3d. Cir. 2002); *Montells v. Haynes*, 133 N.J. 282, 298 (1993). This forecloses all discrete discriminatory acts or practices, such as failure to promote or termination, which occurred outside the limitations period and became actionable on each of the dates they happened. *See infra*. Because Kumar filed her original Complaint on October 5, 2020, her claims *under these statutes* cannot depend on factual allegations occurring before October 5, 2018,[6] including the following:

---

[6]   While equitable tolling may apply to some discrimination-related claims, *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000), Kumar does not offer any reason why her time-barred allegations should be tolled to bring in Defendants' earlier conduct.

- Kelly's October 2017 statements during a meeting calling Kumar "unprofessional," "stupid," and "too smart (sarcastically)." Am. Compl., ¶ 26.
- Kelly's instructions in October 2017 to Kumar not to pursue professional growth opportunities or a promotion. *Id.*
- Kelly's and Osanyo-Lytle's November 2017 attempt to suspend Kumar without pay and transfer her. *Id.* ¶ 25.
- NJSDA's decision to give all employees in HR a promotion and raise in December 2017, except Kumar. *Id.* ¶ 27.
- Kelly's and Osanyo-Lytle's decision to close the Deputy Director position to internal hires in February 2018 after Kumar expressed interest. *Id.* ¶ 28.
- Kumar's receiving a $2,000 raise instead of $10,000 in early 2018. *Id.* ¶ 30.

Additionally, under Title VII, a plaintiff must file an EEOC Charge within 300 days of an adverse employment practice. 42 U.S.C. § 2000e-5(e)(1); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469-70 (3d Cir. 2001). Courts treat this as a statute of limitations, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), and construe it strictly. *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999). For "discrete" adverse acts or "practices," such as denial of career advancement opportunities, failure to promote, and termination, the 300-day period begins to accrue on the day the act(s) happen, and they are not individually actionable if time-barred, even when they relate to timely filed Title VII allegations. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Siroy v. Jobson Healthcare Information LLC*, 16-04523, 2019 WL 1598021, at *6 (D.N.J. Apr. 15, 2019) (defining adverse actions in context of Title VII as, *inter alia*, "a failure to promote or a loss of career advancement opportunities"). Kumar filed her Charge sometime in February 2020, though she does not specify the day. Kumar was also terminated in February 2020, but the Amended Complaint only states that this occurred ten days after she filed with the EEOC. Granting Kumar every favorable inference, I assume that she was terminated on February 28, 2020, and thus filed her Charge on February 18, 2020. As such, her Title VII claims *for discrimination and retaliation* cannot depend on discrete adverse acts or practices occurring before April 25, 2019.

Thus, as to Kumar's § 1983 and NJLAD claims, and her Title VII discrimination and retaliation claims, I may consider only the following factual actions set forth in the Amended Complaint:

- The NJSDA's decision to promote Connolly to Managing Director – Program Operations in July 2019, despite that Connolly had no formal qualifications or experience. Am. Compl., ¶ 33.
- The NJSDA's decision to open the HR Director position to external applications only in September 2019, citing no qualified internal fapplicants as the reason. *Id.* ¶ 35.
- Kelly's decision to promote one of Kumar's white subordinates, Peter Green, to the director level over Kumar in September 2019. *Id.* ¶ 38.
- "[H]ostility and harassment" from Connolly, Guarriello, and Da Silva thereafter. *Id.* ¶ 36.
- The NJSDA's decision to terminate Kumar in February 2020, ten days after she filed her EEOC Charge. *Id.* ¶ 43.

As to Kumar's Title VII *hostile work environment* claim, I may consider all allegations—even those that are untimely and individually non-actionable—to the extent that they are linked to at least one allegation occurring within the limitations period. *Morgan*, 536 U.S. at 115-17, 122; *infra*.

> B. *Count One: 42 U.S.C § 1981 and § 1983 Against Osnayo-Lytle, Kelly, Guarriello, Connolly, Da Silva, and Delgado*

> i.   § 1981 Claim

Kumar first alleges that Defendants violated 42 U.S.C. § 1981. Am. Comp., ¶ 48. Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a); *Brown v. J. Kaz, Inc.,* 581 F.3d 175, 181 (3d Cir. 2009). Fatal to Kumar's § 1981 claim is that "§ 1983 . . . provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S 701, 735 (1989). Indeed, "Congress, in promulgating § 1983 over a century ago, established that section as the exclusive remedy for

violations of § 1981 by state actors." *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009); *Ford v. Se. Pennsylvania Transp. Auth.*, 374 Fed. App'x. 325, 326 (3d Cir. 2010) ("No private right of action lies against a state actor under § 1981."). Because there is no dispute here that all Defendants are state actors, I **DISMISS** Kumar's § 1981 claims with prejudice. *See, e.g.*, *Shipley v. Qiao Hong Huang*, No. 19-654, 2019 WL 1426308, at *3 n.24 (E.D. Pa. Mar. 28, 2019); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 664 (E.D. Pa. 2020); *Campbell v. Supreme Ct. of New Jersey*, No. 11-555, 2012 WL 1033308, at *14 (D.N.J. Mar. 27, 2012) (dismissing § 1981 claim because plaintiff sought to use it as a vehicle to remedy alleged "unlawful race discrimination by state act[ors]").

### ii. § 1983 Claim

To state a claim under § 1983, a plaintiff must allege that a defendant deprived her of a federal right while acting under color of law. *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d. Cir. 2014); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Critically, "[§] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Id.* The first step with any § 1983 cause of action is therefore "to identify the exact contours of the underlying right said to have been violated." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). Stated differently, I must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

Here, Kumar asserts a remedy under § 1983 to the extent that Defendants violated her rights under § 1981. Am. Comp., ¶ 47. Although the parties do not fully discuss it, this is a permissible way for Kumar to plead her claim. "[W]hile § 1981 creates *rights*, § 1983 provides the *remedy* to enforce those rights against state actors." *McGovern*, 554 F.3d at 116 (emphasis in original). I therefore may "consider whether [Kumar's] rights under § 1981 were violated by [Defendants] in the context of [her] § 1983 claim." *Moore*, 471 F. Supp. 3d at 664-65; *Knox v. Union Tp. Bd. of*

*Educ.*, No. 13-5875, 2015 WL 769930, at *14 (D.N.J. Feb. 23, 2015) (analyzing whether remedy lies under § 1983 by applying § 1981 test); *Williams v. Rowan U.*, No. 10-6542, 2014 WL 7011162, at *6 (D.N.J. Dec. 11, 2014) ("Plaintiff may assert § 1981 claims pursuant to § 1983 and such claims may be properly asserted against a state actor."); *Byrd v. City of Philadelphia*, No. 12-4520, 2013 WL 5728669 (E.D. Pa. Oct. 22, 2013) (allowing plaintiffs to amend complaint to re-allege § 1981 claims under § 1983 remedy).

To state a claim under § 1981, a plaintiff must plausibly plead that "(1) [she] is a member of a protected class; (2) [she] satisfactorily performed [her] required duties; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that raise an inference of discriminatory action." *Thomas v. City of Philadelphia*, 573 Fed. App'x. 193, 195-96 (3d Cir. 2014) (quotations and citation omitted). For purposes of this motion, the parties do not dispute that Kumar is a member of a protected class, Am. Compl., ¶ 14, was qualified for her position and adequately performed her work, and suffered four adverse employment actions, as defined by Title VII,[7] within the limitations period: she was denied advancement

---

[7] An adverse employment action in this context is an "action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *LeBlanc v. Hill Sch.*, No. 14-1674, 2015 WL 144135, at *9 (E.D. Pa. Jan. 12, 2015) (quotations and citation omitted); *Santee v. Lehigh Valley Health Network, Inc.*, No. 13-3774, 2013 WL 6697865, at *7 (E.D. Pa. Dec. 19, 2013). These "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. In other words, they are deemed to "occur[] on the day that [they] happen," at which time Title VII's 300-day limitations period begins to accrue. *Id.* As discussed *supra*, the following allegations are time-barred with respect to this claim: Kelly's instructions in October 2017 to Kumar not to pursue professional growth opportunities or a promotion, Am. Compl., ¶ 26, Kelly's and Osanyo-Lytle's November 2017 attempt to suspend Kumar without pay and transfer her, *id.* ¶ 25, the NJSDA's decision to give all employees in HR a promotion and raise in December 2017, except Kumar, *id.* ¶ 27, Kelly's and Osanyo-Lytle's decision to close the Deputy Director position to internal hires in February 2018 after Kumar expressed interest, *id.* ¶ 28, and Kumar's receiving a $2,000 raise instead of $10,000 in early 2018. *Id.* ¶ 30. However, Kumar may use these "as background evidence in support of [her] timely claim[s]." *Morgan*, 536 U.S. at 113. Kumar may also use them to support her hostile work environment claim under a continuing violation theory. *Infra*. Finally, as to this claim, I do not consider the "increasing hostility and harassment" Kumar faced during the limitations period, *id.* ¶ 36, because (as pled) it does not rise to the level of an adverse employment action.

opportunities in September 2019, was not promoted on two occasions, in July 2019 and September 2019, and was terminated in November 2019. *Id.* ¶¶ 33-43. Kumar's *prima facie* case turns on whether she has pled a plausible inference of discrimination with respect to these actions.

A plaintiff may establish an inference of discrimination by, *inter alia*, "comparator evidence, evidence of similar racial discrimination [against] other employees, or direct evidence of discrimination from statements or actions by [the defendant] suggesting racial animus." *Golod v. Bank of America Corp.*, 403 Fed. App'x. 699, 702 n.2 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-12 (2002)); *Varughese v. Robert Wood Johnson Med. Sch.*, No. 16-02828, 2017 WL 4270523, at * 6 (D.N.J. Sept. 26, 2017). I address each action in turn.

<u>Advancement Opportunities</u>. Kumar's claim that she was denied an advancement opportunity based on her race when the NJSDA excluded employees from applying for HR Director fails to survive dismissal because *no one* within the NJSDA could apply from the outset.[8] That fact precludes the inference that Kumar was singled out for less favorable treatment than other employees at all, let alone for being Indian.[9] In any event, Kumar does not plead facts comparing her qualifications to those of the person ultimately hired or promoted, such that I could infer a disparity. *Flowers v. Univ. of Pennsylvania Health Sys.*, No. 08-3948, 2009 WL 1688461, at *6 (E.D. Pa. June 16, 2009) ("In determining whether a plaintiff is qualified for a position, for the purpose of establishing a *prima facie* case, courts in this circuit apply an objective standard."); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (establishing standard); *Makky v.*

---

[8]    In fact, it appears that Kumar "went ahead and applied for [the] position" anyway, "[a]t the recommendation and encouragement of CEO Charles McKenna," which (if anything) indicates *preferential* treatment. Am. Compl., ¶ 28.

[9]    I note that the Amended Complaint does not contain any allegations to suggest a disparate impact claim. *Accord Butler v. Arctic Glacier USA*, 213 F. Supp. 3d 711, 717 (E.D. Pa. 2016). Accordingly, I do not consider that theory of liability.

*Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008) (holding that *prima facie* case fails where "there is unchallenged objective evidence that [plaintiff] did not possess the minimal qualifications for the position plaintiff sought to obtain or retain"). And Kumar herself states that she could not apply for the HR Director position, not because she is Indian *per se*, but because of her "relationship with Defendant Kelly." Am. Comp., ¶ 37. While their relationship apparently prevented them from working together on an application, as is the "policy" when an employee seeks an internal position, *id.*, there is no support in the pleadings for the conclusion that Kelly's strained relationship with Kumar was itself based on Kumar's race.[10] *Accord Morton v. Arnold*, 618 Fed. App'x. 136, 141-42 (3d Cir. 2015) (affirming dismissal where complaint did not "intimate[] why [plaintiff] believe[d] that race motivated the [defendant's] actions").

    <u>Failure to Promote</u>. Kumar's claim that she was not promoted based on her race fails for the same reason: there is nothing in the Amended Complaint to suggest that she was not promoted because she is Indian, or that the people who were promoted were substantially less qualified than she. *Accord Golud*, 403 Fed. App'x at 702 (affirming dismissal because plaintiff presented no factual allegations supporting claim that non-Jewish doctors received promotions because they were non-Jewish, and holding that plaintiff "did not provide any characteristics of those individuals who received the promotions to which she alleges she was entitled," "did not provide any factual allegations regarding those promotions, who rejected her promotion requests and whether she was, in fact, qualified to fill those positions, but simply "conclusorily asserted that she was denied promotions"); *Doe v. Triangle Doughnuts, LLC*, 471 F. Supp. 3d 115, 131 (E.D. Pa.

---

10    To the contrary, based on Kumar's own allegations, it appears that her relationship with Kelly (and Osanyo-Lytle) soured when Kumar went over their heads and asked then-CEO Charles McKenna for "a senior role," which "angered" Kelly and Osanyo-Lytle. Am. Compl., ¶ 22. Kumar references other times where she may have "reach[ed] out to the CEO" directly, which further caused her relationship with her supervisors to deteriorate. *See, e.g.*, *id.* ¶ 26 ("[Kumar] was asked to . . . stop any kind of communication with the CEO.").

2020) (dismissing claim because plaintiff offered "next to nothing" to suggest race-based decision-making); *Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *15 (D.N.J. Apr. 21, 2014) (dismissing claim because "it asserts nothing more than conclusory allegations of discrimination"). While Kumar simply declares that one of the white employees promoted over her, Connolly, was not qualified for the position he received, that bare assertion (based, as pled, on nothing more than Kumar's subjective belief) is not sufficient to make out a *prima facie* case.[11]

*Accord Tavarez v. Twp. of Egg Harbor*, No. 09-6119, 2010 WL 2540094, at *4 (D.N.J. June 16, 2010) ("Although it is *conceivable* that Tavarez was passed over for promotions in 2008 and 2009 because of his race, Plaintiff fails to offer the necessary facts to support the *plausibility* of this claim.") (emphasis in original). In short, Kumar's *ipse dixit* or speculation cannot defeat dismissal on a failure to promote theory. *See, e.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999) (deeming unsupported allegations of discrimination based solely on plaintiff's personal opinions to be irrelevant, and concluding that "Jones makes numerous allegations . . . which he predicates on nothing more than his beliefs without having actual knowledge of them"); *Longmire v. Wyser-Pratte*, No. 05-6725, 2007 WL 2584662, at *11 (S.D.N.Y. Sept. 6, 2007) (dismissing

---

[11]    Moreover, the balance of Kumar's Amended Complaint tends to belie her assertion that junior employees were erroneously promoted over her. For example, Kumar alleges that she "thoroughly trained, mentored, and coached" two junior employees for "one plus years," and that they obtained an "HR Certification from Mercer County Community College" to ensure that they met "requirements for the promoted position." Am. Compl., ¶ 27. With respect to Connolly, at most, Kumar alleges that she received preferential treatment because "she was very close friends to Andrew Yosh (COO)." *Id.* ¶ 33. But "[e]mployees are not insulated from personality conflicts, favoritism, nepotism, or, for that matter, from most inequities encountered in the workplace." *Sykes v. Pennsylvania State Police*, No. 05-1349, 2007 WL 141064, at *5 (W.D. Pa. Jan. 17, 2007). "Employers and supervisors are not required to like, respect, or treat their employees fairly. The law demands only that they refrain from treating employees differently on the basis of race, gender, age, or any other characteristic that the law deems to be protected." *Id.*; *see also Hanson v. Sports Authority*, 256 F. Supp. 2d 927, 933 (W.D. Wisc. 2003). Likewise, with respect to Green, Kumar herself acknowledges that he was promoted "for handling the hiring audit" and was "rewarded" for those "efforts." Am. Compl., ¶ 38.

claim where plaintiff "relie[d] exclusively on his own conclusory allegations-which [were] wholly and uniformly uncorroborated").

    <u>Termination</u>. Kumar's claim that she was fired based on her race also fails. As to direct evidence, Kumar does not allege a single statement or action from any Defendant which could conceivably support a claim of "overt or explicit" racial animus, or "reflect discriminatory bias." *Ke v. Drexel Univ.*, No. 11-6708, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002). In fact, Kumar points to no race-based comments in the Amended Complaint at all. As to evidence of similar mistreatment against other Indian employees, Kumar does assert that the NJSDA terminated a former colleague, Sameer Shah, because he "demanded equality in promotional opportunities." Am. Comp., ¶ 40. But this assertion lacks any factual context or support, such as the circumstances under which Shah was fired or a connection between Shah's termination and his race. Again, all that Kumar offers is her own conclusory determination that Defendants' decision-making must be race-based because both employees are Indian, which does not make it so. *Accord Doe v. Sizewise Rentals, LLC*, 530 Fed. App'x. 171, 174 (3d Cir. 2013) (affirming dismissal because plaintiff's assertions of "racial plots" which "persecute[ed]" plaintiff "along with other Hispanics and Blacks" were "devoid . . . of factual allegations that . . . defendants acted with any racially discriminatory animus"); *Baig v. Nuclear Regulatory Comm'n*, No. 10-0842, 2011 WL 2214660, at *1 (D.N.J. June 6, 2011) (dismissing Asian-Indian plaintiffs' complaint because it only offered "'conclusory allegations' and [did] not allege any specific acts that would provide a connection between [their] race … and termination"); *Daughtry v. Family Dollar Stores, Inc.*, 819 F. Supp. 2d 393, 402 (D. Del. 2011) (construing various similar allegations as unrelated to race).

Likewise, Kumar does not specifically identify any non-Indian employees who were "similar in 'all relevant respects,'" *Opsatnik v. Norfolk S. Corp.*, 335 Fed. App'x. 220, 223 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)), or who were investigated by the legal department for policy violations, but not terminated. *Accord Wilcher v. Postmaster Gen.*, 441 Fed. App'x. 879, 882 (3d Cir. 2011) (taking into account "factors such as [their] job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in"); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013) (same); *Cannon v. Correctional Med. Servs.*, 726 F. Supp. 2d 380, 393 (D. Del. 2010) (dismissing claim because "plaintiff has not identified a single similarly situated nurse outside of plaintiff's race who was spared adverse action by CMS despite working with an expired license"). At most, Kumar implies that white employees *would have been treated* more favorably had they been in her position, but that falls short. *See, e.g.*, *Mojica v. Advance Auto Parts, Inc.*, No. 15-1418, 2016 WL 107844, at *5 (E.D. Pa. Jan. 11, 2016) (dismissing claim because "[t]he only comparators Plaintiff purports to identify with respect to any of these situation[s] are unidentified 'white guys'"); *Ferrell v. Harvard Indus., Inc.*, No. 00-2707, 2001 WL 1301461, at *17 (E.D. Pa. Oct. 23, 2001) (dismissing plaintiff's claim because he "vaguely alleges that others were insubordinate or out of their work areas without similar consequences but names no specific individuals he believes were similarly-situated but disparately treated"); *Fisher v. Cath. Soc. Servs. of Archdiocese of Phila.*, No. 18-04653, 2019 WL 3731688, at *5 (E.D. Pa. Aug. 8, 2019) (dismissing plaintiff's claim because he "makes bare allegations that 'other similarly situated white employees' were given preferential treatment, favored, or received less discipline for conduct that was 'far more severe,'" without specifically "identifying any comparators or how they were similarly situated"). Accordingly, I **DISMISS** Kumar's § 1983 claim.

14

C.     *Count II: Title VII Claim Against the NJSDA*

i.     Racial Discrimination

To establish a *prima facie* case of race-based discrimination under Title VII,[12] a plaintiff must allege that she: (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment practice; and (4) the circumstances of the adverse employment action imply discrimination. *Jones*, 198 F.3d at 410-11; *Butler v. Arctic Glacier USA*, 213 F. Supp. 3d 711, 716 (E.D. Pa. 2016). This is functionally identical to the test under § 1981. *See, e.g.*, *Brown*, 581 F.3d at 181-82 ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."); *Verdin v. Weeks Marine Inc.*, 124 Fed. App'x. 92, 96 (3d Cir. 2005) ("[C]ourts utilize the same analysis for the merits of Title VII and Section 1981 claims."). Accordingly, Kumar's Title VII racial discrimination claim against the NJSDA fails for the same reason as her § 1981 claim.

ii.     Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must allege that "(1) [she] suffered intentional discrimination because of [her] [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)); *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276-77 (3d Cir. 2001); *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293

---

12     "Individual employees are not liable under Title VII." *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002); *Webster v. Dollar Gen., Inc.*, 197 F. Supp. 3d 692, 694 n.1 (D.N.J. 2016) (explaining that Title VII only prohibits discrimination by an "employer," and "creates no path for liability against an individual employee"). This is presumably why Kumar only sues the NJSDA with respect to Count II. Am. Comp., ¶¶ 60-64.

(3d Cir. 1999). The first four elements establish that an environment is actually hostile, while the fifth element determines employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

Contrary to other Title VII theories of liability, a plaintiff may aggregate individually non-actionable and untimely instances of discrimination to support her hostile work environment claim, which "collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 115-17, 122. These acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor*, 440 F.3d at 127. Kumar may proceed under this theory here because she alleges a pattern of discrimination spanning from 2017 to 2019, the last act of which occurred within Title VII's 300-day statute of limitations. I therefore consider all allegations in the Amended Complaint in the context of Kumar's hostile work environment claim.

<u>Intentional Discrimination</u>. Kumar's hostile work environment claim fails, from the start, because there are no facts in the Amended Complaint to suggest intentional discrimination. For the reasons discussed above, Kumar's allegations regarding career advancement opportunities in September 2019, promotions in July 2019 and September 2019, and termination in November 2019 fall far short. Whether pled as discriminatory in and of themselves or part of a harassing pattern of behavior, Kumar does not establish that Defendants undertook these actions based on her race, except by way of her own say-so.

Kumar's other allegations do not command a different result. First, there are no facts to suggest that Kelly's instruction in October 2017 to Kumar not to pursue professional growth opportunities or a promotion, Am. Compl., ¶ 26, or Osanyo-Lytle's decision to close the Deputy Director position to internal hires in February 2018, even after Kumar inquired about the position,

*id.* ¶ 28, had anything to do with Kumar's race. *See, e.g.*, *Lassiter v. Children's Hosp. of Phila.*, No. 05-6834, 2008 WL 304891, at *11 (E.D. Pa. Jan. 31, 2008) *Oleksiak,* 231 Fed. App'x. at 156 (holding that plaintiff "offer[ed] no evidence except her own conclusory statements and suppositions as proof that [her employer's] decision not to promote her . . . was made because of her race and age"). The same is true of Kumar's allegation that Kelly and Osanyo-Lytle attempted to suspend her without pay and transfer her to another department in November 2018. *Id.* ¶ 25. Kumar simply does not link this event to her being Indian. Kumar further alleges that all employees in HR received a promotion and a raise in December 2017, except her. *Id.* ¶ 27. This is closely related to her claim that she received a $2,000 raise instead of $10,000 in early 2018. *Id.* ¶ 30. Assuming these facts are true, they do raise red flags. So much so that the NJSDA apparently opened an ethics investigation, fired Osanyo-Lytle, and gave Kumar a title change plus $10,000. *Id.* ¶ 39. Nevertheless, as pled, all that Kumar does is advance a litany of complaints without any indication that the underlying acts were racially motivated or taken out of animus against her because she is Indian.

That leaves the allegation that Connolly and others treated Kumar with "increasing hostility and harassment," which is the sort of threadbare legal conclusion that the pleading standards preclude. *Accord Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 440 (E.D. Pa. 2001) (rejecting evidence "vaguely referring to 'comments' without any further detail as to their substance or when or how often they occurred"). The allegation that Kelly called Kumar "unprofessional," "stupid," and "too smart" in a sarcastic manner in October 2017 fares no better because, again, it implies no connection to her race. *Cf. Dodd v. Septa*, No. 06-4213, 2008 WL 2902618, at *13 (E.D. Pa. July 24, 2008) (finding that plaintiff implicitly connected the unfair treatment to his race because he complained that he was harassed because of his hair and stated

that his hair style is popular in the black community); *Barber v. Univ. of Med. & Dentistry of New Jersey*, 118 Fed. App'x. 588, 591 (3d Cir. 2004) ("While there was clearly friction between Casey and Barber, there is no evidence that Casey's behavior stemmed from any racial animus.").

Kelly's comments were rude and undoubtedly unwelcome, but Title VII "does not guarantee a utopian workplace, or even a pleasant one." *Waite v. Blaire*, 937 F. Supp. 460, 468 (W.D. Pa. 1995) (quoting *Vore v. Indiana Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994)). "Employees are not insulted from personality conflicts, favoritism, nepotism, or, for that matter, from most inequities encountered in the workplace," *Sykes v. Pennsylvania State Police*, No. 05-1349, 2007 WL 141064, at *5 (W.D. Pa. Jan. 17, 2007), *aff'd*, 311 Fed. App'x. 526 (3d Cir. 2008), and Title VII "does not set forth a general civility code for the American workplace," *Burlington Northern and Santa Fe Railway Company v. White*, 548 U.S. 53, 68 (2006), nor is it "designed to purge the workplace of vulgarity." *Baskerville v. Culligan International Company*, 50 F.3d 428, 430 (7th Cir. 1995). Even if Kelly's comments were offensive, that is not enough to trigger Title VII protection. *Harris*, 510 U.S. at 370 ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee[] does not sufficiently affect the conditions of employment to implicate Title VII.") (internal citation omitted); *Caver v. City of Trenton,* 420 F.3d 243, 262 (3d Cir. 2005) (holding that allegedly offensive conduct must be "extreme" and constitute "change in the terms and conditions of employment"). In fact, "assuming these somewhat ambiguous incidents were related to [Kumar's] race, they are the type of offhand comments that are insufficient to support a hostile work environment claim." *Woodard v. PHB Die Casting*, 255 Fed. App'x. 608, 610 (3d Cir. 2007); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim").

### iii.    Retaliation

Finally, a plaintiff alleging retaliation under Title VII must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). Unlike her other claims, Kumar survives dismissal here.

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006). To satisfy this prong, an employee must have an "objectively reasonable" belief that the activity she opposes constitutes unlawful discrimination under Title VII. *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 322 (3d Cir. 2008). Not every report or complaint "entitles its author to protection from retaliation under Title VII." *Davis v. City of Newark*, 417 Fed. App'x. 201, 202 (3d Cir. 2011). For example, "a general complaint of unfair treatment does not translate into a charge of illegal [race] discrimination" if it does not suggest an unlawful reason for it. *Barber*, 68 F.3d at 701-02; *Slagle v. County of Clarion*, 435 F.3d 262, 267 (3d Cir. 2006) (holding that plaintiff did not engage in protected activity because he did not specifically complain that his employer violated Title VII); *Gharzouzi v. Northwestern Human Services of Penn.*, 225 F. Supp. 2d 514, 540 (E.D. Pa. 2002) ("The complaint must specifically mention the plaintiff's belief that he/she was discriminated against on account of his/her membership in some protected class.").

Here, Kumar alleges that she filed a formal complaint with the NJSDA's EEO Director, Manuel Castillo, in October 2019, in response to purportedly discriminatory actions by Connolly, Guarriello, and Da Silva. Am. Comp., ¶ 36. Kumar also alleges that she filed a Charge with the

19

EEOC in February 2020, ten days before she was fired, alleging racial discrimination. Am. Comp., ¶ 42. Both constitute protected activity under Title VII.[13] *See, e.g.*, *Omogbehin v. Dimension Intern., Inc.*, No. 08-3939, 2009 WL 2222927, at *5 (D.N.J. July 22, 2009) (EEO complaint) (citing *Fahie v. New York City Dep't Corr.*, 737 F. Supp. 15, 17 (S.D.N.Y. 1990)); *Moore v. Shineski*, 487 Fed. App'x. 687, 698 (3d Cir. 2012) (EEOC Charge). Kumar then suffered an adverse employment action: she was terminated. *Burlington*, 548 U.S. at 68 (defining an adverse action in this context as one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (quotations omitted).

Kumar also alleges a plausible causal connection between (at least) her termination and her EEOC Charge. While "the mere fact that [an] adverse employment action occurs after [protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link," timing alone can suffice if it is "unusually suggestive." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997); *LeBoon*, 503 F.3d at 232; *Woodson*, 109 F.3d at 920 (stating, though in dicta, that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link"). Only "[w]here the time between the protected activity and adverse action is not so close" may courts "look to the intervening period for demonstrative proof [of causation], such as actual antagonistic conduct or animus against the employee."[14] *Marra v. Phila.*

---

13    A complaint about workplace behavior that is so minor and isolated that it could not "remotely be considered 'extremely serious'"—that is not within some striking distance of an actual hostile work environment—is not protected because "[n]o reasonable person could have believed that [it] . . . violated Title VII's standard." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam); *Kengerski v. Harper*, 6 F.4th 531 (3d Cir. 2021). But Defendants do not suggest that is the case with respect to Kumar's EEOC Charge.

14    Thus, of course, the "mere passage of time is not legally conclusive proof *against* retaliation." *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993) (emphasis added).

*Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007); *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279-81 (3d Cir. 2000).

Here, temporal proximity by itself is unusually suggestive of retaliatory motive: Kumar was fired just ten days after she filed her EEOC Charge, and about a month after she filed her EEO complaint. "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," *LeBoon*, 503 F.3d at 233, the timing in this case "is in the realm of what this Court and others have found sufficient at the *prima facie* stage." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (three days); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (three weeks); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (four days); *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (five days). Accordingly, I **DENY** the motion to dismiss Kumar's Title VII retaliation claim.

> ### D.      Count III: NJLAD Claim Against Osnayo-Lytle, Kelly, Guarriello, Connolly, Da Silva, and Delgado

Lastly, Kumar alleges an NJLAD violation against the individual defendants. The NJLAD prohibits "an employer, because of the race . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. § 10:5-12(a). Kumar argues that Osnayo-Lytle, Kelly, Guarriello, Connolly, Da Silva, and Delgado violated this protection. Am. Comp., ¶ 66. Defendants argue that Kumar's NJLAD claim fails as a matter of law because she has not sued the NJSDA itself in Count III. I agree. Under the NJLAD, an employer must be found liable for discriminatory employment practices before an employee can be found liable. *Hanani v. N.J.*, No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005), *aff'd*, 205 Fed. App'x. 71 (3d Cir. 2006) ("[A]n individual employee cannot be found liable for discrimination under NJLAD unless the employer is first found liable."). Even then, an

employee may only be liable for aiding and abetting, which is a high bar.[15] *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097 (N.J. 2009); *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2009). Because Kumar no longer asserts an NJLAD claim against the NJSDA in her Amended Complaint, which is a necessary predicate for subsequent employee liability, and in fact modified the original Complaint by removing the NJSDA as a Defendant, I **DISMISS** this claim.

## IV.    CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' motions in part and **DENY** them in part as follows: I **DISMISS** Kumar's § 1981 and NJLAD claims with prejudice; I **DISMISS** her § 1983 claim, Title VII race discrimination claim, and Title VII hostile work environment claim without prejudice; and she may proceed with her Title VII retaliation claim. If Kumar wishes to amend her Title VII and § 1983 claims, consistent with this Opinion, she may file a motion to amend before the Magistrate Judge.

**DATED**: August 25, 2021                                    /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            U.S. Chief District Judge

---

[15]    To state a claim for aiding and abetting, a plaintiff must allege: "(1) the party whom the defendant aids [ ] performs a wrongful act that causes an injury; (2) the defendant [is] generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant [ ] knowingly and substantially assist[s] the principal violation." *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 127 (3d Cir. 1999).